IN THE UNITED STATES DISTRICT COURT
OF THE SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO.:

CEFERINO PEREZ and AIDA ESTHER
CHAPARRO, as the personal
representatives of the estate of
LIZ MARIE PEREZ CHAPARRO;
CEFERINO PEREZ and AIDA ESTHER
CHAPARRO, individually; and AMILKAR
PEREZ CHAPARRO, individually

       Plaintiffs,

v.

CARNIVAL CORPORATION,
d/b/a CARNIVAL CRUISE LINES,
a foreign corporation,

       Defendant.

_____/

## COMPLAINT

Plaintiffs, **CEFERINO PEREZ and AIDA ESTHER CHAPARRO, as the personal representatives of the estate of LIZ MARIE PEREZ CHAPARRO; CEFERINO PEREZ and AIDA ESTHER CHAPARRO, individually, and AMILKAR PEREZ CHAPARRO** (hereinafter collectively "Plaintiffs"), through undersigned counsel, file suit against Defendant, **CARNIVAL CORPORATION, d/b/a CARNIVAL CRUISE LINES, a foreign corporation,** (hereinafter "Defendant"), alleging upon information and belief as follows:

### GENERAL ALLEGATIONS APPLICABLE TO ALL COUNTS

1.    This is an action for damages in excess of the jurisdictional limits of this

1

Court, exclusive of costs and interest. Plaintiffs are seeking damages in excess of seventy five thousand dollars ($75,000.00), exclusive of interest, costs and attorney's fees. This Court has jurisdiction based on diversity of citizenship 28 USC § 1332. This action also arises under maritime law such that the Court has admiralty or maritime jurisdiction pursuant to 28 U.S.C. § 1333.

2. **CEFERINO PEREZ** and **AIDA ESTHER CHAPARRO** are husband and wife and are the natural parents of their deceased daughter, **LIZ MARIE PEREZ CHAPARRO**.

3. **CEFERINO PEREZ** and **AIDA ESTHER CHAPARRO** have been appointed as the personal representatives of their deceased daughter, **LIZ MARIE PEREZ CHAPARRO,** by order dated May 5, 2011 in the probate proceeding *In re: Estate of Liz Marie Perez-Chaparro*, case no. 11-1089-CP-01, in the Probate Division of the Circuit Court in and for Miami-Dade County.

4. **AMILKAR PEREZ CHAPARRO**, is the brother of his deceased sister, **LIZ MARIE PEREZ CHAPARRO**.

5. Plaintiffs are over the age of twenty-one and are citizens of Aguada, Puerto Rico.

6. Defendant, **CARNIVAL CORPORATION, d/b/a CARNIVAL CRUISE LINES, a foreign corporation,** is based in Miami, Florida. Defendant has consented to jurisdiction and venue in this Court. Defendant requires in the contract of carriage that all cases filed by passengers be filed in this jurisdiction.

7. At all times material hereto, Defendant personally or through an agent:

   a. Operated, conducted, engaged in and/or carried on a business venture in the State of Florida, and in particular Miami-Dade County, Florida;

   b. Engaged in substantial business activity in the State of Florida, and in particular in Miami-Dade County, Florida;

   c. Operated vessels and provided vessels for cruises in the water of this state; and

   d. Committed one or more acts as set forth in Florida Statute Section 48.08 (1), 48.181, and 48.193, which submit Defendant to jurisdiction and venue of this Court.

8. Defendant owns and operates a fleet of cruise ships, including the *M/V Victory*.

9. The Defendant is subject to the jurisdiction of the courts of this state and of this United States District Court.

10. At all times material hereto, Defendant transported fare-paying passengers on cruises aboard the vessel *M/V VICTORY* and other vessels.

11. At all times material hereto, Defendant owned, operated, managed and/or controlled the *M/V VICTORY*.

12. At all material times, Plaintiffs were passengers aboard the *M/V Victory* for a seven day Carribean cruise.

13. At all times Defendant had a continuing duty to exercise reasonable care for the safety of its passenger throughout the length of the entire cruise, including stops at

ports of call. *Carlisle v. Ulysses*, 475 So. 2d 248, 251 (Fla. 3d DCA 1985).

14. At all material times the Defendant owed a duty of reasonable care to the Plaintiffs in the selection of ports of call and issuing warnings and advisories to be given to passengers disembarking at ports of call. *Sullivan v. Ajax Navigation Corp.,* 881 F. Supp. 906 (S.D.N.Y. 1995);. *Carlisle v. Ulysses*, 475 So. 2d 248, 251 (Fla. 3d DCA 1985); *Gillmor v. Caribbean Cruise Line, Ltd.*, 789 F. Supp. 488, 491 (D.P.R. 1992).

15. At all material times the Defendant had a duty to warn passengers of the danger of crime known to exist in a particular place in a port of call where a passenger is invited or is reasonably expected to visit. *Carlisle v. Ulysses*, 475 So. 2d 248, 251 (Fla. 3d DCA 1985). *Gillmor v. Caribbean Cruise Line, Ltd.*, 789 F. Supp. 488, 491 (D.P.R. 1992).

16. The Eleventh Circuit Court of Appeals has acknowledged that "Ports-of-call not only add to the enjoyment of the cruise but form the essential function of the cruise experience...Plainly, individuals choose cruise ship vacations because they want to visit unfamiliar places ashore. When a passenger selects a particular cruise, ports-of-call or stopovers provide those passengers with the "cruise experience" for which they are paying. Simply put, the destinations or ports-of-call are frequently the main attraction." *Doe v. Celebrity Cruises, Inc.,* 394 F.3d 891, 901 (11th Cir. 2004).

17. On July 12, 2010, **LIZ MARIE PEREZ CHAPARRO,** and Plaintiffs boarded an open air bus at the port of St. Thomas to travel to a destination known as Coki Point which contains Coki Beach and a tourist attraction known as Coral World.

18. Coki Beach is a popular destination in St. Thomas for both locals and tourists. At the time of **LIZ MARIE PEREZ CHAPARRO's** death, Defendant sold excursions to Coki Beach and Coral World. Defendant recommended Coki Beach and Coral World as a safe destination to passengers, including the Perez Chaparro family.

19. On the night first night of the cruise, Plaintiff, **CEFERINO PEREZ**, and his son, Amilcar Perez, were attending a party on the top deck of the ship. A male employee who was serving drinks to Plaintiff and his son described Coki Beach and Coral World to Plaintiff and highly recommended that Plaintiff and his family visit these attractions.

20. Coki Beach is well known as a location for drug sales, thefts and gang violence. There have been numerous reported violent crimes at Coki Beach. **CARNIVAL** was well aware of these violent crimes.

21. While riding in the open air bus leaving Coki Beach Plaintiff, **LIZ MARIE PEREZ CHAPARRO,** was shot and killed in the cross-fire of a gang-related killing.

22. On the day of **LIZ MARIE PEREZ CHAPARRO'S** death, a gang funeral was being conducted for a gang member who had been shot to death by a rival gang member the previous week.

23. The deceased gang member had been shot to death at the Coki Mall which is located in close proximity to Coki Beach. The funeral service for the deceased gang member was being held at the Coki Point Cemetery, which is located directly adjacent to Coki Beach. Tourists traveling to and from Coki Beach and Coral World would, of

necessity, travel past the Coki Point Cemetery. **CARNIVAL** knew or should have known of the gang murder and the fact that the funeral was taking place at Coki Point on **CARNIVAL's** port day.

24.     The road leading to Coki Beach, Coki Mall, Coki Point Cemetery and Coral World is a narrow two lane road. On the day of the shooting, attendees at the funeral had parked along the road resulting in a traffic bottle neck.

25.     The bus in which the Plaintiffs were traveling was slowly inching past the cemetery when the rival gang members began shooting at one another. The bus was trapped in the cross fire and bullets sprayed the bus. **LIZ MARIE PEREZ CHAPARRO** was fatally shot.

26.     At the time of **LIZ MARIE PEREZ CHAPARRO'S** death, Defendant was well aware of the gang violence and public shootings in St. Thomas but failed to warn its passengers of this danger.

27.     Defendant employs numerous crew members and shore-side employees, both on its cruise ships and in its headquarters in Miami, Florida who are responsible for issues of passenger safety. Defendant involves itself in all incidents when its passengers are reported to be victims of crime on board Defendant's ships and at ports of call.

28.     Defendant thorough its headquarters in Miami, Florida and using its network of port agents, shore side employees and club representatives, monitors crime rates throughout the Caribbean and Mexico.

29. In 2009, the murder rate in the Virgin Islands was at an all time record of 56 homicides per 100,000 people.[1] This was approximately ten (10) times the national average for the United States.[2]

30. At the time of Plaintiff's death in July of 2010, the Virgin Islands had already experienced 43 homicides in a territory containing slightly more than 100,000 people.[3] This is equivalent to or exceeds the homicide rate in Jamaica, which has previously borne the dubious distinction of "murder capital of the world."[4] In comparison," the dense urban area of North Miami, Florida containing approximately the same number of people had recorded seven (7) murders during this same period of time."[5] The average murder per 100,000 in the United stated is 5.[6]

31. At the time of Plaintiff's death, shootings between gang members were common in the Virgin Islands.[7] These shootings often occurred in public locations.[8]

---

[1] Ailene Yasmin Torres, The Virgin Island Daily News, January 29, 2010, "*V.I's Deadly Record: Virgin Islands Homicide Rate was Almost Ten Times the National Average in 2009.*"

[2] *Id.*

[3] Dave Game, "*Teen On Birthday Cruise Killed in Gang Shoot Out,*" July 13, 2010 (cbs4.com/local/shoot.us.virgin.2.1801176.html)

[4] "Murder," Wikipedia

[5] Dave Game, supra

[6] "Murder," Wikipedia

[7] John Bauer, The St. Thomas Source, April 22, 2010, "*Guns, Gangs and Drugs to Blame for Rise in V.I. Crime Rate, Officials Say;*" AOLNews, July 14, 2010 "*Arrest Made in*

32. In 2009 and 2010, the escalating crime problem in St. Thomas was well documented in the media, and there was growing public concern over this phenomena.[9]

33. In response to rising crime, Virgin Islands officials convened a meeting of the Committee on Public Safety, Homeland Security and Justice to discuss violent crimes in April of 2010.[10] The attorney general for the Virgin Islands acknowledged that many of the killings were revenge killings and were the result of turf wars. The Attorney General recognized that "innocent persons can get killed in the crossfire of the many revenge killings that are going on in the streets of St. Thomas, St. Croix and St. John."[11] This was just three months before **LIZ MARIE PEREZ CHAPARRO'S** death.

34. Defendant knew or should have known that St. Thomas was experiencing a crime wave and that homicides in the Virgin Islands were at record highs.

35. Defendant knew or should have known that this crime wave included numerous public shootings between gang members.

---

*Killing of Tourist in US Virgin Islands"* (Police Commissioner states "criminal elements have frequently used large gatherings to exact revenge on people they believe have wronged them in some way.")

[8] See, Bauer, *supra*; Darren Mortenson, St. John Source, April 1, 2010 "Hospital Ground Becoming Ground Zero for Gun Violence" Corliss Smithen, Daily New Staff, July 13, 2010, "Gun Battle Erupts at Funeral;"

[9] See Bauer, supra.

[10] See, Bauer, supra

[11] *Id.*

8

36. Defendant knew or should have known that three months prior to Plaintiff's death, the government of the Virgin Islands convened a meeting to address the exploding crime problem, and in particular gang murders and public shootings.

37. Defendant knew or should have known that the attorney general for the Virgin Islands predicted that innocent bystanders would be killed during the commission of the many revenge killings plaguing the island.

38. Defendant knew or should have known that Coki Beach and Coki Mall were dangerous locations well known for drug sales, gang violence and other criminal activity.

39. Defendant knew or should have known that a gang member had been murdered the previous week at the Coki Mall.

40. Defendant knew or should have known that the funeral for the murdered gang member was occurring at the Coki Point Cemetery which is located in close proximity to Coki Beach.

41. Defendant knew or should have known that Coki Beach is located next to the Coki Point Cemetery on the same narrow road.

42. Defendant knew or should have known that there was a high risk of an attempted gang revenge killing at the funeral.

43. Defendant failed to warn Plaintiffs of the high crime and murder rates in St. Thomas.

44. Defendant failed to warn Plaintiffs of the prevalence of public shootings in St.

Thomas.

45. Defendant failed to warn Plaintiffs that the Coki Beach area was a particularly dangerous location with known criminal and gang activity.

46. Defendant failed to warn Plaintiffs that a gang member had been murdered in a gang related shooting at Coki Mall the previous week.

47. Defendant failed to warn Plaintiffs that the funeral for the murdered gang member was being held at the Coki Point Cemetery and that there was an increased risk of an attempted revenge killing, or other violence.

48. **LIZ MARIE PEREZ CHAPARRO'S** death occurred due to Defendant's negligent failure to investigate, and or screen its ports of call; its failure to warn Plaintiffs of known criminal danger in St. Thomas, and in particular in the Coki Beach area, and intentional misconduct alleged below.

49. Defendant did not take reasonable and adequate steps to reduce the danger to its passengers who disembark at ports of call and can become victims of crime. Defendant heavily promotes the sale of Defendant's Carribean cruises without properly warning passenger of the dangers that can be encountered in ports of call, including the danger of crime.

50. As a direct and proximate result of Defendants' negligence, Plaintiff sustained certain damages which are alleged below.

51. Plaintiffs' damages, as more fully alleged below, were proximately and

directly caused by Defendants' negligence and wrongdoing.

52. Defendants have been timely notified of the particulars of **LIZ MARIE PEREZ CHAPARRO'S** death and all pre-conditions to this action have been met or waived.

53. This action is under the maritime jurisdiction of the Court, and therefore the General Maritime Law of the United States as supplemented by state wrongful death law, namely the Florida Wrongful Death Act, F.S. §768.16 et seq. apply to the case. The death occurred because the Plaintiff was disembarked at a port of call chosen by the Defendant and promoted by Defendant for the purpose of inducing passengers to purchase cruise tickets. Ports of call are recognized as the sine qua non of the cruise experience. Defendant's chose to disembark passengers at the port of St. Thomas without appropriate warnings notwithstanding the sharp escalation of violent street crime. Thus, the condition of maritime jurisdiction of connection to traditional maritime activity and of location are satisfied.

54. **LIZ MARIE PEREZ CHAPARRO'S** death was caused by the negligence of Defendant in its policies and procedures established and implemented from its headquarters in Miami, Florida. Thus, the law and remedies are supplemented by Florida law namely the Florida Wrongful Death Act, F.S. §768.16 et seq.

55. This is a survival action and a wrongful death action of a non seaman under the general maritime law, as allowed by *Yamaha Motor Corporation v. Calhoun*, 516 U.S. 199 (1996), *Norfolk Shipbuilding and Dry Dock Corp. v. Garris*, 532 U.S. 811 (2001) and their

progeny.

## COUNT I

## NEGLIGENCE

56. Plaintiffs re-adopts and re-allege paragraph 1 through 55, and further alleges as follows:

57. On July 12, 2010 and continuing thereafter, Defendant breached the duty owed to Plaintiffs of reasonable care under the circumstances by committing one or more of the following acts and/or was negligent in the operation of the business of the *M/V VICTORY* in the following respects:

    a. By negligently selecting St. Thomas as a port of call and marketing this port of call to its passengers;

    b. By negligently failing to investigate the occurrence of crime and the safety of St. Thomas for passengers;

    c. By negligently failing to ascertain whether adequate police protection existed to protect passengers disembarking in St. Thomas;

    d. By negligently failing to warn passengers disembarking in St. Thomas that there are real and significant dangers of crime, including public shooting and gang violence;

    e. By deliberately creating an environment whereby passengers would be deceived into believing that they are in a safe, fun and "family" friendly

        environment when, in reality, passengers are disembarked into high crime locations where they are at risk of being victims of crime;

    f.      By negligently failing to warn passengers not to venture near known areas of drug and gang activities;

    g.      By negligently failing to advise passengers of local occurrences and conditions, such as gang murders and gang funerals, that might result in hazardous conditions and areas which should be avoided;

    h.      By covering up prior crimes occurring while passengers are disembarked in ports of call, thereby preventing the public from gaining knowledge regarding potential dangers in port;

    i.      By failing to implement policies or procedures to track prior instances of crime on excursions and/or ports of call so that passengers could be warned of the dangers posed to their health and physical and mental well being;

    j.      By concealing, suppressing, and mis-characterizing information involving prior incidents where passengers are victimized while on disembarked in ports; and,

    k.      By protecting Defendant's business interest and media image at the expense of the fundamental rights of the passengers and other members of the public who will be subjected to crime and otherwise victimized in the future.

58.      Defendant's negligence, directly and proximately caused the injuries and

damages to Plaintiffs, as follows:

    a.    **LIZ MARIE PEREZ CHAPARRO** suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of hospitalization, medical and nursing care and treatment, loss of earnings, loss of ability to earn money, and death.

    b.    Plaintiffs, **CEFERINO PEREZ** and **AIDA ESTHER CHAPARRO**, have suffered and continue to suffer pecuniary damages, non-pecuniary damages, pain and suffering of the decedent before death, funeral expenses, lost wages, loss of net accumulations, pain and suffering of the survivors, loss of support, services, and companionship of the survivors.

**WHEREFORE**, Plaintiffs respectfully demand judgment against the Defendant for survival action damages and wrongful death damages which were and continue to be caused in whole or in part by the negligence of the Defendant for personal injuries suffered by **LIZ MARIE PEREZ CHAPARRO**, and for her subsequent death and for and on behalf of the estate and the survivors for compensatory damages including but not limited to: **pecuniary damages:** medical expenses, funeral expenses, loss of net accumulations, loss of inheritance, medical, transportation and other expenses related to and caused by the negligence and death; and loss of support and services; **non-pecuniary damages**: pain and suffering and mental anguish of the decedent before death; loss to the survivors of the companionship of **LIZ MARIE PEREZ CHAPARRO**, and mental pain and suffering of the

survivors from the date of death; pain and suffering and mental anguish of the survivors; loss of support, services, companionship, any and all other damages which are recoverable under the General Maritime Law as supplemented by and which are recoverable under the Florida Wrongful Death Act, Fla. Stat. §768.16 et. seq. and any case law interpreting or augmenting that Act; any and all other damages which are recoverable under the wrongful death statues, case law, or other law of the state of Florida where the negligence of Defendant occurred; all court costs, all interest; and any and all other damages which the Court deems just or appropriate.

## COUNT II

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

59.     Plaintiffs adopts and re-alleges paragraphs 1 through 55, above, as if fully set forth herein, and further allege:

60.     Defendant recklessly and negligently disembarked Plaintiffs in a dangerous, high crime port without warning Plaintiffs of the dangers that might be encountered, particularly and specifically at or near Coki Beach, a site known to **CARNIVAL** for its violence.  Defendant negligently failed to warn Plaintiffs of local conditions and occurrences.  Defendant failed to warn Plaintiffs of specific areas which should be avoided due to the danger of crime.

61.     **LIZ MARIE PEREZ CHAPARRO** was shot in the side while traveling near Coki Beach.  The open air bus that Plaintiffs were traveling in became stuck in a traffic jam

caused by people attending the funeral of a slain gang member.

62.     When the shooting started passengers on the bus, including Plaintiffs, dove to the floor of the bus. The bus was sprayed with bullets. Plaintiffs were in fear for their lives during the shooting.

63.     **LIZ MARIE PEREZ CHAPARRO** cried out to her father, **CEFERINO PEREZ,** that she had been hit. He saw that she had a gun shot wound in her lower abdomen.

64.     Passengers on the bus called for an ambulance. When the ambulance did not arrive, the bus driver began speeding to the hospital.

65.     **CEFERINO PEREZ** began performing CPR on **LIZ MARIE PEREZ CHAPARRO**. **AMILKAR PEREZ CHAPARRO** and other passengers on the bus held on to **CEFERINO PEREZ** and **LIZ MARIE PEREZ CHAPARRO** to keep them from being thrown from the speeding bus.

66.     **CEFERINO PEREZ** performed CPR on his daughter all the way to the hospital but **LIZ MARIE PEREZ CHAPARRO** was declared dead shortly after arriving at the hospital.

67.     Defendant's negligent and reckless conduct proximately caused the death of **LIZ MARIE PEREZ CHAPARRO** and caused Plaintiffs to experience severe and extreme emotional distress which has manifested itself physically.

68.     The negligent infliction of emotional distress proximately caused Plaintiffs to experience extreme and ongoing pain and suffering, which pain and suffering has

manifested itself physically, including fear, loss of capacity to enjoy life, lost wages, impairment of earning capacity, medical and therapy expenses, aggravation of a pre-existing condition or conditions, and these conditions are continuing and they will experience these damages in the future.

**WHEREFORE**, Plaintiffs pray that judgment be entered in Plaintiffs' favor and against Defendant, for damages, costs, interest, pre-judgment interest, and for all such other relief to which Plaintiffs may be entitled by virtue of these proceedings.

Dated: May 24, 2011

Miami, Florida                                  Respectfully submitted,


                                                 /s/ James M. Walker
                                                James M. Walker
                                                Florida Bar No. 755990
                                                WALKER & O'NEILL, P.A.
                                                Attorneys for Plaintiffs
                                                Plaza 57, Suite 430
                                                7301 S.W. 57th Court
                                                South Miami, Florida 33143
                                                Tel. No.       (305) 995-5300
                                                Facsimile:     (305) 995-5310
                                                jwalker@cruiselaw.com

## CERTIFICATE OF SERVICE

   I hereby certify that on May 24, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic notices of Electronic Filing.


                /s/ James M. Walker
                James M. Walker (755990)


## SERVICE LIST

| | |
|---|---|
| Jonathan B. Aronson, Esq. | James M. Walker, Esq. |
| jaronson@aronsonlawfirm.com | Jwalker@cruiselaw.com |
| Aronson Law Firm | Walker & O'Neill, P.A. |
| 5730 S.W. 74 Street, Suite 800 | Plaza 57, Suite 430 |
| Miami, Florida 33143 | 7301 SW 57th Court |
| Phone: (305) 662-1233 | South Miami, Florida 33143 |
| Facsimile (305) 662-1266 | Phone:   (305) 995-5300 |
| *Attorney for Plaintiff* | Facsimile: (305) 995-5310 |
| | *Attorney for Plaintiff* |

Philip D. Parrish, Esq.
phil@parrishappeals.com
Plaza 57, Suite 430
7301 SW 57th Court
South Miami, Florida 33143
Phone: (305) 670-5550
Facsimile (305) 775-5155
*Attorney for Plaintiff*